**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SELWYN NIEVES | _____ : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-3049 |
| | : | |
| GREYHOUND LINES, INC., <u>et al.</u> | : | |

<u>MEMORANDUM AND ORDER</u>

Kauffman, J.                                                                    August 26, 2008

        Now before the Court are the Motion for Summary Judgment filed by Third-Party

Defendant ARAMARK, Inc. (the "ARAMARK Motion") and the Motion for Summary

Judgment filed by Defendants/Third-Party Plaintiffs Greyhound Lines, Inc. and Mount

Corporation (the "Greyhound Motion").  For the reasons discussed below, the ARAMARK

Motion will be granted, and the Greyhound Motion will be denied.


**I. BACKGROUND**

        This action arises from a workplace injury sustained by Plaintiff Selwyn M. Nieves

("Plaintiff") on July 4, 2004.  At the time of the injury, Plaintiff was an employee of

ARAMARK, Inc. ("ARAMARK") acting in the scope and course of his employment, and as a

result of the injury, he has been receiving worker's compensation from ARAMARK pursuant to

the Pennsylvania Workers' Compensation Act ("WCA"), 77 Pa. Cons. Stat. §§ 1 <u>et seq.</u>  As

alleged in the Complaint, Defendant/Third-Party Plaintiff Mount Corporation ("Mount") was, at

all times relevant to this action, the owner of a maintenance facility (the "Greyhound

Maintenance Center") located at 710 N. Delaware Avenue in Philadelphia.  Compl. ¶ 3.

-1-

Pursuant to a written service agreement (the "Agreement") with Defendant/Third-Party Plaintiff

Greyhound Lines, Inc. ("Greyhound"), Defendant Servicemaster, TBS Division

("Servicemaster") was responsible for maintaining the premises of the Greyhound Maintenance

Center.  Id. ¶ 4.[1]  As part of his job duties, Plaintiff supervised the janitorial staff responsible for

cleaning the Greyhound Maintenance Center.

   Plaintiff alleges that on July 4, 2004, "there existed a dangerous condition on certain

concrete steps situated in the Greyhound Maintenance Center, to wit, a slippery substance which

was allowed and permitted . . . to be on the steps with no warnings, barricades or similar

precautions."  Id. ¶ 5.  At approximately 11:00 p.m., "while lawfully descending said concrete

steps," Plaintiff fell as a result of the dangerous condition.  Id. ¶ 6.  Due to this fall, he suffered

various injuries requiring ongoing medical care and became "unable to attend to his usual

occupation at loss of income for which damages are demanded."  Id. ¶¶ 16-18.

   On June 26, 2006, Plaintiff filed suit in the Philadelphia Court of Common Pleas against

Greyhound, Mount, and Servicemaster, and on July 12, 2006, Defendant Greyhound removed the

action to this Court.  On March 27, 2007, Greyhound and Mount filed an Answer as well as a

Third-Party Complaint against Third-Party Defendant ARAMARK and Servicemaster.  On

January 8, 2008, ARAMARK filed its Motion for Summary Judgment against Greyhound and

Mount, and on January 31, 2008, Greyhound and Mount filed their Motion for Summary

Judgment against Plaintiff.

---

   [1]      Prior to the accident at issue in this case, ARAMARK acquired Servicemaster and
assumed its contractual obligations.  Servicemaster has not joined in either of the two Motions
pending before the Court.

## II.  LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law."  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion.  See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial."  Id.

## III.  ANALYSIS

### A.  The ARAMARK Motion

In their Third-Party Complaint, Greyhound and Mount assert that, pursuant to the

Agreement between Greyhound and ARAMARK,[2] ARAMARK is responsible for all costs and expenses Greyhound has incurred in defense of this action and for indemnifying it in case of liability.  In pertinent part, the Agreement states:

> Except as otherwise agreed herein, each party agrees to indemnify and save the other party harmless from any and all claims, demands, costs, injury (including death), and expenses of every kind whatsoever (whether in tort, strict liability, contract or otherwise), including reasonable attorney's fees for the defense thereof, arising from the indemnifying party's wrongful act, omission or negligence in connection with this Agreement or services hereunder by such party or its employees, officers, independent contractors or agents.  In case of any action or proceedings brought against either party by reason of any such claim, upon notice from such party, the indemnifying party covenants to defend such action or proceeding by counsel and means reasonably satisfactory to the other party.

Agreement § 14, attached to the ARAMARK Mot. at Ex. A.  Greyhound and Mount allege that according to the terms of the Agreement, ARAMARK is responsible for indemnifying Greyhound because Plaintiff was an employee of ARAMARK.

In the instant Motion, ARAMARK argues that the WCA bars Greyhound's claim for indemnification.  Pursuant to the WCA, worker's compensation is the employee's exclusive remedy against his or her employer.  See, e.g., 77 Pa. Cons. Stat. § 481(a); Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997) ("Pennsylvania's workers' compensation statute provides the sole remedy 'for injuries allegedly sustained during the course of employment.'" (quoting Dugan v. Bell Tel. of Pa., 876 F. Supp. 713, 723 (W.D. Pa. 1994))).  "Not only does [the WCA] provide an employer with immunity from suit for accidents within the scope of employment, it also bars an employer from being joined in a suit against a third party

---

[2]       As explained above, ARAMARK was not a party to the Agreement but assumed Servicemaster's contractual obligations as its successor in interest.  Accordingly, the parties agree that the Agreement is effectively between Greyhound and ARAMARK.

-4-

arising from such an accident." Clark v. Williamette Indus., 918 F. Supp. 139, 141 (W.D. Pa. 1996) (citing Heckendorn v. Consol. Rail Corp., 465 A.2d 609, 610 (Pa. 1983)). The purpose of the employer's immunity to third-party claims "is to avoid a situation where the employer would become doubly liable for the same accident." Id. (citing Kennedy v. Shuwa Invs., 825 F. Supp. 712, 713 (E.D. Pa. 1993)).

Under the WCA, "the employer . . . shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action." 77 Pa. Cons. Stat. § 481(b); see also Kiewit E. Co. v. L&R Constr. Co., 44 F.3d 1194, 1200 (3d Cir. 1995) ("Although the [WCA] immunizes employers from indemnification suits by third parties who have been sued by injured employees, it exempts from protection any employers that contractually agreed with third parties to waive their immunity under the statute."). ARAMARK argues that although the Agreement specifies that it will indemnify Greyhound in certain circumstances, the indemnification language is not sufficiently specific to waive its immunity under the WCA.[3] In support of its argument, it relies on Bester v. Essex Crane Rental Corp., 619 A.2d 304, 308-09 (Pa. Super. Ct. 1993), in which the Pennsylvania Superior Court announced the strict standard for waiver of WCA immunity in a written contract:

In order to avoid the ambiguities which grow out of the use of general language,

---

[3]     Because Mount is not a party to the Agreement, any claims it is attempting to raise against ARAMARK are barred by the WCA regardless of the Agreement's terms, as ARAMARK has not agreed to indemnify Mount. Accordingly, ARAMARK is entitled to summary judgment as to all of Mount's claims. The remainder of this section addresses Greyhound's reliance on the Agreement to seek indemnity against ARAMARK.

contracting parties must specifically use language which demonstrates that a named employer agrees to indemnify a named third party from liability for acts of that third party's own negligence which result in harm to the employees of the named employer.  Absent this level of specificity in the language employed in the contract of indemnification, the Workmen's Compensation Act precludes any liability on the part of the employer.

In <u>Bester</u>, the court explained that "in order for an employer to be held liable in indemnification for injuries to its own employees caused by the negligence of the indemnitee there must be an express provision for this contingency in the indemnification clause," and that because the contract at issue did not provide expressly for indemnification based on the indemnitee's negligence, the employer did not waive the protections of the WCA.  <u>Id.</u> at 308.  The court explained that while the contract need not waive WCA immunity in express language, "[t]he intent to indemnify against claims by employees of the alleged indemnitor . . . must clearly appear from the terms of the agreement."  <u>Id.</u> at 307 (citing <u>Remas v. Duquense Light Co.</u>, 537 A.2d 881 (Pa. Super. Ct. 1988)).

Greyhound points to the language stating that ARAMARK will indemnify it for "any and all claims, demands, costs, injury (including death), and expenses of every kind whatsoever" as evidence that ARAMARK intended to waive its WCA immunity.  Agreement § 14.  As the court explained in <u>Bester</u>, however, "[c]ase law has established that the indemnity provision in the Workmen's Compensation Act must be construed strictly, and general indemnity language such as 'any or all' or 'any nature whatsoever' is insufficient" to waive immunity.  619 A.2d at 307 (citing <u>Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc.</u>, 171 A.2d 185 (Pa. 1961)); <u>see also</u> <u>Parilla v. United States</u>, 2007 U.S. Dist. LEXIS 50401, at *4-5 (E.D. Pa. July 12, 2007) ("The Pennsylvania precedents are quite clear that a general or blanket indemnity or contribution

provision in a written contract is not sufficient to remove the immunity protection for an employer.  While reference to the waiver provision in the Act itself is not required, the waiver in a contract between employer and a third party must specifically provide for indemnity or contribution by the employer for claims of the employer's employees.").  The Agreement states that ARAMARK will indemnify for claims "arising from the indemnifying party's wrongful act, omission or negligence in connection with this Agreement or services hereunder by such party or its employees, officers, independent contractors or agents," but is silent on whether ARAMARK will indemnify for claims of its employees arising from Greyhound's own negligence. Agreement § 14.

The absence of an express statement that ARAMARK will indemnify Greyhound for its own negligence is fatal to Greyhound's reliance on the Agreement.  The generalized language of the Agreement is not sufficiently specific to constitute a waiver of immunity, and accordingly, the Court will grant the ARAMARK Motion because Greyhound's claims against it are barred by the WCA.  See, e.g., Parilla, 2007 U.S. Dist. LEXIS 50401, at *6 (finding no waiver of WCA immunity where the agreement contained no "specific responsibility [on the part of the employer] to indemnify or pay contribution with respect to a claim by one of its own employees against the Government"); Weinberg v. J.S. Cornell & Son, Inc., 2004 U.S. Dist. LEXIS 19052, at *9 (E.D. Pa. Sept. 21, 2004) (finding no waiver where "the language in the subcontract . . . does not explicitly provide that Keystone is required to indemnify Cornell if one of Keystone's employees is injured as a result of Cornell's negligence"); Clark, 918 F. Supp. at 141 ("The instant provision offers nothing more than the general language frowned upon in Bester.  No language exists which specifically states that indemnification will occur for harm resulting to Southern's own

employees.  Accordingly, we hold that the Hold Harmless Clause does not constitute a waiver of the immunity afforded by the [WCA]."); Shumosky v. Lutheran Welfare Servs. of Ne. Pa., 784 A.2d 196, 204 (Pa. Super. Ct. 2001) (finding no waiver where the indemnification clause did not cover the employer's employees and where the clause did not apply explicitly to the third party's negligence).

### B.  The Greyhound Motion

In its Motion, Greyhound contends that because it owned the Greyhound Maintenance Center but relinquished control over the property to its independent contractor Servicemaster (and later ARAMARK), it did not owe Plaintiff a duty of care and cannot be liable for negligence.[4]  In support of its argument, it cites Hader v. Coplay Cement Mfg. Co., 189 A.2d 271, 277 (Pa. 1963), in which the Supreme Court of Pennsylvania explained that "[a]n owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor."  In the instant case, however, a material question of fact exists as to whether Greyhound relinquished possession of all or part of the Greyhound Maintenance Center, and Greyhound cites no evidence in the record demonstrating that it had given up control over the stairwell where the accident occurred.  Indeed, the Agreement states that "for the purpose of completing essential supervisory tasks Greyhound will make available to the Contractor a desk and telephone."  Agreement

---

[4]      Greyhound's assertion that it owns the Greyhound Maintenance Center contradicts the allegation in the Complaint that Mount was the owner of the property.  The Greyhound Motion does not explain the relationship, if any, between Greyhound and Mount, nor does the Motion present a single argument as to why Mount is entitled to summary judgment.

Attachment A § 3.1; see also id. § 3.2 ("A shop workspace will also be designated within Greyhound for the purpose of Contractor's personnel to store Contractor provided supplies, implements and equipment."); id. § 4.1 ("Contractor shall have the general duty to provide a safe and healthful work environment for their [sic] personnel to the extent that the Contractor has control over the work environment." (emphasis added)).

The fact that the Agreement provided ARAMARK only limited office and storage space in the Greyhound Maintenance Center suggests that Greyhound maintained possession and control over the remainder of the property, including the stairwell in which the incident occurred, and accordingly, Greyhound has failed to demonstrate that summary judgment is warranted on this theory. See Blake v. Greyhound Lines, Inc., 448 F. Supp. 2d 635, 640-41 (E.D. Pa. 2006) (rejecting Greyhound's reliance on Hader and denying its summary judgment motion because "[Greyhound] does not purport to have relinquished possession or control of either the service bay or the bus, and the presence of [Greyhound] employees on the bus and in the service area seems to belie such a claim"); cf. Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030, 1034 (3d Cir. 1987) (upholding the district court's jury instruction that the landowner could be liable to an independent contractor's employee for the employee's injuries sustained during contracting work because the independent contractor's "exclusive possession over the ladder access to the roof was far from clear").[5]

---

[5]    As the Supreme Court of Pennsylvania has explained, "in cases where a possessor of land employs an independent contractor . . . a possessor of land must use 'reasonable care to make the premises safe or give adequate and timely warning of dangers known to him but unknown to the contractor or his employees.'" Farabaugh v. Pa. Tpk. Comm'n, 911 A.2d 1264, 1273 (Pa. 2006) (quoting Crane v. I.T.E. Circuit Breaker Co., 278 A.2d 362, 364 (Pa. 1971)). While "the possessor of the land can insulate himself from liability by warning the contractor of the existence of any dangerous conditions on the premises which he knows or should know," id.

In a related argument, Greyhound asserts that because Plaintiff was responsible for supervising the cleaning of the Greyhound Maintenance Center, it is not responsible for any dangers caused by Plaintiff or ARAMARK as part of the Agreement's performance.  It is well-established under Pennsylvania law that "a possessor will not be held responsible for defective conditions of the land if they are the product of the independent contractor's work."  Farabaugh, 911 A.2d at 1273; see also Crane, 278 A.2d at 364 (stating that a possessor of land cannot be liable "if the defective conditions were created by the work of the independent contractor or his employees" (citing Celender v. Allegheny County Sanitary Auth., 222 A.2d 461 (Pa. Super. Ct. 1966)).  However, based on the record before the Court, it is unclear whether the "defective conditions" in the stairwell were caused by an ARAMARK employee or were caused by Greyhound's own negligence.[6]  Accordingly, because an issue of material fact exists as to whether ARAMARK caused or created the dangerous condition, Greyhound is not entitled to summary judgment under this theory.

Greyhound next asserts that Plaintiff is barred from recovery by the assumption of risk doctrine.  It contends that because Plaintiff supervised the janitorial staff at the Greyhound

---

(quoting Crane, 278 A.2d at 364), nothing in the record suggests that Greyhound warned ARAMARK of the allegedly dangerous stairwell.

[6]    Greyhound's only evidence that ARAMARK employees caused the dangerous condition is the fact that an ARAMARK employee cleaned the stairway daily and that as a result, the stairway might be slippery due to mopping.  See Pl.'s Dep. 19, attached to the Greyhound Mot. at Ex. A ("[The janitor is] scheduled early in the morning when he comes in to sweep [the steps] and make sure everything is clear and clean . . . .").  This testimony, however, does not describe when the janitor mopped the stairs, or if the stairs were mopped on the day of the incident.  Moreover, on the very same page of his deposition testimony, Plaintiff also stated that the black steps and the floor were covered with "an oily film."  Id. at 18-19.  Greyhound's speculation about a possible cause of the incident is insufficient to establish that ARAMARK employees were solely responsible for the allegedly dangerous conditions.

Maintenance Center and that because the janitorial staff was responsible for cleaning the site of the incident, "it is clear" that he understood the risks involved in walking down stairs that may be slippery due to recent mopping.  "Under Pennsylvania law, assumption of risk is established by showing that the injured party fully appreciated the nature of the risk it faced and voluntarily assumed it." Kirschbaum v.  WRGSB Assocs., 243 F.3d 145, 156 (3d Cir. 2001).  In cases of alleged negligence, a plaintiff's assumption of risk relieves the defendant of any duty owed to the plaintiff, provided the defendant shows that "the 'nature and extent' of the risk were 'fully appreciated' and that the plaintiff voluntarily proceeded to face that risk."  Barnes v. Am. Tobacco Co., 161 F.3d 127, 148 (3d Cir. 1998) (quoting Childers v. Power Line Equip. Rentals, Inc., 681 A.2d 201, 208 (Pa. Super. Ct. 1996)).

As discussed above, however, Greyhound has not pointed to any evidence demonstrating when the floor was mopped or whether Plaintiff voluntarily assumed the risk of walking down recently mopped stairs.[7]  Given the absence of evidence in the record to establish assumption of risk, Greyhound is not entitled to summary judgment based on this theory.  See Mascharka v. Leola Family Rest., Inc., 2004 U.S. Dist. LEXIS 25755, at *12-13 (E.D. Pa. Dec. 23, 2004) ("In the context of a summary judgment motion, unless 'reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury,' the decision as to whether a defendant bore a

---

[7]    Moreover, Plaintiff testified that the stairway was cleaned "early in the morning." Pl.'s Dep. 19.  Even if Plaintiff's description of the janitor's cleaning activities could be read to include mopping, he alleges that the accident occurred at approximately 11:00 p.m.  Compl. ¶ 6. Based on the sparse record presented thus far in these proceedings, the Court cannot conclude that, even if a stairwell mopped in the morning could remain slippery well into the evening, Plaintiff appreciated and voluntarily exposed himself to such a risk.

duty to a plaintiff and whether a plaintiff exposed himself to risk such that a defendant would be relieved of any such duty is a matter for the jury to decide." (quoting <u>Howell v. Clyde</u>, 620 A.2d 1107, 1112-13 (Pa. 1993))); <u>see also</u> <u>Kaplan v. Exxon Corp.</u>, 126 F.3d 221, 225 (3d Cir. 1997) (stating that the issue of assumption of risk "goes to the jury unless reasonable minds could not disagree").

## IV.  CONCLUSION

For the reasons discussed above, the ARAMARK Motion will be granted, and because summary judgment in favor of Greyhound is not appropriate, the Greyhound Motion will be denied.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SELWYN NIEVES | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-3049 |
| | : | |
| GREYHOUND LINES, INC., <u>et al.</u> | : | |

**<u>ORDER</u>**

    **AND NOW**, this    26TH    day of August, 2008, upon consideration of Third-Party Defendant ARAMARK Management Limited Services Partnership's Motion for Summary Judgment (docket no. 30) and the Response of Defendants/Third-Party Plaintiffs Greyhound Lines, Inc. and Mount Corp. (docket no. 31), it is **ORDERED** that the Motion is **GRANTED**. Accordingly, ARAMARK Management Limited Services Partnership is **DISMISSED** from this action.  Upon consideration of the Motion for Summary Judgment of Defendants/Third-Party Plaintiffs Greyhound Lines, Inc. and Mount Corp. (docket no. 32) and Plaintiff's Response thereto (docket no. 34), it is **ORDERED** that the Motion is **DENIED**.

                                    **BY THE COURT:**


                                    **/s/ Bruce W. Kauffman**
                                    **BRUCE W. KAUFFMAN,  J.**